

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford
Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. O-3412
Re: Authority of Texas Liquor
Control Board to replace
liquor stamps stolen from
a common carrier and sub-
sequently destroyed by the
thief.

Your request for our opinion on the hereinabove caption-
ed question has been received. We also have before us the
following instruments which were submitted with your letter:

    1. A letter dated April 12, 1941, signed by
E. A. Taft, Superintendent, Railway Express Agency,
Houston, Texas;

    2. Invoice in duplicate from McKesson & Robins,
to H. E. Pogue Distillery Company, Maysville, Kentucky,
covering $1908.00 in liquor stamps;

    3. Express receipt issued to McKesson & Robins;

    4. Air Express receipt # 8-15-27.

    5. Affidavit of Arelious Price.

We quote from your letter as follows:

"The attached instruments explain the claim which the
Railway Express Agency is requesting the Texas Liquor
Control Board to settle by the replacement of the lost
stamps herein described.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Bert Ford, page 2

"The Texas Liquor Control Board has requested me to secure your valued opinion as to whether or not it would be authorized to make this replacement."

The facts as stated in your letter from Mr. E. R. Taft, hereinabove referred to, as follows:

"Mr. E. L. Bodelle, our General Agent at Austin, recently advised you that we had lost while in transit in air express service, a package of liquor stamps valued at $1008 and, as we had secured conclusive evidence that the stamps were actually destroyed, Mr. Bodelle requested information as to just what procedure should be followed in presenting our application to secure a duplicate lot of stamps.

"The lot of stamps referred to were contained in a package valued at $1008 and forwarded by McKesson & Robbins, Houston, under date of Feb. 10, 1941, addressed to E. E. Pague Distillery, Maysville, Ky. This shipment moved in air express service from Houston, Feb. 10th, covered by our air express waybill 8-15-27 of same date, routed via Cincinnati. The shipment was receipted for at Houston by our driver, M. J. Landgrebe, at 4:00 P. M., Feb. 10th, and was dispatched from Houston via Eastern Air Line trip #22 departing from the Houston Airport at 8:55 P.M. that date.

"This Eastern Air Line trip arrived in Atlanta, Ga., at 1:45 A. M., Feb. 11, 1941, and you will find attached an affidavit executed by one Arellious Price, a negro porter who was then employed by the Eastern Air Lines in Atlanta, and the affidavit outlines all of the information in connection with the theft of this particular envelope of stamps and the destruction of the stamps by fire. The evidence seems conclusive that the stamps were actually destroyed.

"Railway Express will of course be called upon to entertain claim of amount $1008 providing we cannot secure a duplicate lot of stamps and deliver same to McKesson & Robbins, Houston, to satisfy their claim.

"Will you please give consideration to delivering to Mr. E. L. Bodelle, our General Agent, Austin,

> a duplicate lot of liquor stamps valued at $1008,
> with the understanding that the Railway Express will
> hold itself responsible for any loss the Liquor
> Board might incur in connection with furnishing the
> duplicate stamps - in other words, protect the
> Board against the possible recovery of the original
> lot of stamps."

The affidavit of Arellous Price states that he did steal, conceal and destroy the package containing the liquor stamps in question while handling the air express in his capacity as a porter at the Municipal Airport in Atlanta, Georgia, on the morning of February 11, 1941.

Unless authority is given to the Texas Liquor Control Board in the Texas Liquor Control Act, the board would not be authorized to replace liquor stamps that were stolen from a common carrier and subsequently destroyed by the thief.

Article 666-45 (d), Vernon's Annotated Penal Code, provides as follows:

> "(d). Refunds for stamps may be made by
> the Texas Liquor Control Board from the revenue of
> stamp sales before the same has been allocated.
> A refund may be made by the Board in all cases
> where stamped liquor is returned to the distillery
> or manufacturer upon a certification by an inspec-
> tor of the Board who inspected the shipment. The
> Board may also make a refund to any person who was
> authorized to purchase stamps and who is in pos-
> session of unused stamps upon discontinuation of
> business. In either instance, it must be shown that the
> claimant for refund purchased the stamps, for which a
> refund is asked, from the State Treasurer. No other
> refunds shall be allowed." (Underscoring ours)

The hereinabove quoted statute is the only authority under which the board is authorized to make refunds for liquor stamps. The statute clearly limits the board's authority to make refunds for liquor stamps to "cases where stamped liquor is returned to the distillery or manufacturer upon a certification by an inspector of the board who inspected the shipment," and "to any person who was authorized to purchase stamps and who is in possession of unused stamps upon discontinuation of business." (Underscoring ours)  The statute

Hon. Bert Ford, page 4

expressly disallows any other refunds.

It is, of course, obvious that the board would be un-authorized to make a refund to the Railway Express Agency for the lost stamps under the facts here involved.

It might be contended that a refund for stamps, as that term is used in the quoted statute, only means to refund the money and does not include the replacing of the lost stamps by issuing duplicate stamps. Whether said term includes both the refunding of the money or the lost stamps and the issuing of duplicate stamps in lieu of the lost stamps, is a question not necessary for us to decide in this case, and we, therefore, express no opinion thereon.

If both methods of allowance are embraced within the term "refunds for stamps" as used in the statute, the board would be expressly denied the authority to replace the lost stamps by issuing duplicate stamps to the Railway Express Agency, for the reason that the circumstances of this case are not such as the statute provides shall be the exclusive circumstances under which refunds for stamps may be made by the board.

If the statute is restricted to the refunding of money for the stamps, the board would still be without authority to make the replacement of the lost stamps as we have been unable to find any other statute in the act giving the board authority to replace lost stamps by issuing duplicate stamps.

You are respectfully advised, therefore, that it is the opinion of this Department, under the facts stated, that the Texas Liquor Control Act does not give the Texas Liquor Control Board the authority to replace the lost stamps in question.

We are returning herewith the several instruments referred to hereinabove.

APPROVED MAY 16, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

EP:N

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Edgar Pfeil
Edgar Pfeil
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN